Do I need to push this button? You're all set. Okay, good morning. I would like to reserve five minutes for rebuttal, please. Okay. It's an honor to be before you. May my testimony please the court. This is a case of first impression, where the convergence of facts are unique. The laws in play are unique. The question is, can corporate interests implicate an elected official's elected constitutional duties? As a joint actor, five years ago today, coincidentally, it's amazing, five years ago today, they banned me without fair notice in violation of a policy that required them. They had a duty to honor, and they violated this mandate in five different ways. The lower court closed the door. By violating motion to dismiss standards, they just shut the door. There were five reversible errors. I have them well outlined on the reply on page number 10. They include violating rule FRE 902. Instead of looking at the evidence, they tossed it. They set it aside. And I would like to point out that 50% of the self-authenticating data that they pushed aside was government data. It was self-authenticating. It was actually greater if you include the police video, a visit of X. They violated the standards in addition to the motion to dismiss and the motion to leave standards. They misapplied rule 46, and they converted it into a 77. They failed miserably to analyze state action doctrine. Can I ask you about that? Under visit X, absolutely. I think that's really critical to your argument. Could you maybe just pause there and drill down and give us your best argument regarding Alaska Airlines serving as a state actor here? Serving as a state actor. Okay, so I think referring to the excerpt of records 118, there's about seven pages there. Under the mandate, they were supposed to, it was February 5th, 77 days after they were warned, they were told to stop the no-exemption policy. They were told to provide accommodations for those with ADA disabilities that had a valid exemption. Okay, so you're talking about Alaska Airlines. Alaska Airlines. And you're talking about the mask mandate at the height of the epidemic. Correct. And your contention, you've explained this in the briefing, is that there were supposed to be, well, there's a period where there were exemptions, and then you have alleged there's a period where that changed. And I think your contention has to do with medical permission, and there was a kerfuffle over that. I had a valid mask exemption that under my affidavit, and it's really important that you read my affidavits, it's ER 55 to 67, where I basically validated my statements, which really summarizes. We have read that carefully. Thank you. Of course. But we're looking for the legal principle now, because you're not suing the state of Alaska or the federal government, you're suing Alaska Airlines. Correct. So could you explain your theory of that Alaska Airlines served as a state actor here? Okay. So basically what Alaska Airlines was doing is they were alleging to uphold this mandate, basically. And you'll see in the video, X, that I had a mask on at all times. And basically what they did is that they were acting outside the mandates. On November 15th, this is pre-mandate, they told me to wear two masks. On December 1st, they targeted me and monitored me. I was warned they were going to be monitoring me. On January 15th, I asked for exemption. It was denied. Well, to get at the state actor question, to the extent that you allege that they are acting outside the mandate, in those sort of outside actions, what's the connection to any sort of government official? They were definitely 19 – that's what happened on April 22nd. So basically they were banning me based on the mandate, so they were joint actors enforcing it. Okay, so let's get a little bit more specific about this. So on the one hand, you're saying that Alaska Airlines was enforcing a mandate, and clearly the mandate has a connection to government officials, right? I understand that. And then you also just said that they were doing things beyond the mandate or outside the mandate that you are challenging. Correct. And for those things, what is the string, what is the connection to any sort of government authority? Okay, so when they went and summons the police, a lot of it is in Video X. It's outlined very, very carefully. You'll see the coordination where they go and they summon the police. I was peacefully sitting there getting ready to board. And you'll see this, the last eight minutes is critical of Exhibit X, where they went, summons police. They came, they confronted me, they confronted me very – and then as I tried to peacefully get around them with a mask on compliant, they said they were going to cancel my ticket if I didn't put a mask on. So that's what I'm trying to get at. So an Alaska Airlines employee says, we're going to cancel your ticket. And you argue that the mandate didn't require that. That was their own choice outside the mandate. Is that right?  Okay, so then for that choice that Alaska Airlines is making, we're going to cancel your ticket. What tells us that the state of Alaska or anybody who is associated with the state of Alaska wanted the airline to do that? Basically what I can tell you is that the federal government has jurisdiction only in the two federal airports in D.C. Other than that, they're state and locally owned. So the only mandate that could have been in play in the airport where they said the incident occurred that led to the ban was when they threatened to cancel my ticket. It was Governor Dunleavy or a local mandate. Because it happened in an airport that's owned by the state. They're saying the incident happened because I can tell you, the flight was 100% peaceful. I went ahead and boarded the plane, 100% peaceful, got off. I honestly thought it was a joke when I got banned. When I got the email, I said, this is crazy. I knew that Dunleavy's House Bill 76, which the president said I had killed in the Senate, I knew it was on the floor the following Monday. So it was just really shocking to me. It was a critical bill for me because I was trying to protect constitutional and individual rights during this time as an elected official. Instead, I got this email that I was banned, and it was a veil. They didn't say specifics. There was no fair notice. They were warned in five ways. They were supposed to educate how to get exemptions. They failed. They were said to stop their no-exemption policy. It failed. This is the Consumer Protection, February 5th. They said that they were supposed to do an assessment prior to ban. They failed. They gave me absolutely no fair notice before this. They discriminated. They targeted me. And they denied a senator, me as a senator, on the monopoly carrier to go fulfill. I was in furtherance of my constitutional duties. They blocked any meaningful access to the Capitol to and from. And I think that's absolutely critical because I had a valid CDC mask exemption from a medical doctor. And I think it's really, really important for you guys to know that in the airport, the only federal jurisdiction is actually TSA screening and the conveyances. Other than that, it's under state and local control. But when you say, I mean, I understand that you were blocked. When you say they blocked, who do you mean by they? The Alaska Airlines. And what they did, they didn't give me fair notice. They were actually said not to deny transportation over and over again. Even after they did an assessment, the mandate, the Consumer Protection says the least restriction option according to the passenger. Okay. I just want to make sure all the communications you got were from Alaska. They actually sent me an email. And I was only allowed to talk to security. I guess I was such a danger. You know, they alleged without any assessment that was required. And I was only allowed to talk to security from that point on. They directed me. Jeremy Hort, that's all I could talk to from that point on. So, basically, they weaponized the mandate. And still it's under veiled. I still to this day don't know specifically what happened and why. The only due process that happened was behind private corporate doors. And I think that's very, very important. Do you want to reserve the rest of your time?  Yeah, a little more. Okay. Thank you, Your Honor. You bet.  Good morning, Your Honors, and may it please the Court. I'm glad we're starting, actually, with state action because the Section 1983 claim is obviously very significant here. It's the linchpin to the 1985 claim, 1986 claim. And because the emergency use authorization claim is just patently frivolous, these are the only federal claims in the case. Ms. Reinbold is incorrect about the way the airport works. Incorrect that TSA only is responsible at two airports in Washington, D.C. That is manifestly not so. What happened was after 9-11, Congress passed the Aviation and Transportation Security Act, which transferred security responsibility at airports from the FAA to the DHS and in turn to TSA. TSA became responsible for ensuring security at all airports in the United States. The fact that Juneau or Anchorage are city or state owned is of no consequence whatsoever. Virtually all our major airports are. SFO is owned and operated by the city and county of San Francisco. Oakland Airport by the Port of Oakland. So that's the way it works. When ABSA was passed and the power was delegated to TSA, the TSA administrator was in turn given the authority to enlist local police to support the federal police. And so it was local police supporting federal police, not the reverse. If one looks at Ms. Appellant's Video X, which we objected to, it's highly edited. It has voiceover. It's very argumentative. But if you just look at it, turn the sound off, you'll see what's there is consistent. There are a bunch of federal transportation security officers and one little local police guy. And that's the way it works. So there was no there's no state action as posited. Ms. Appellant has referred to an Alaska mask mandate. I'm not even sure what that is. She's pointed to a not even one page memo. There's a memo from the governor to his employees, state employees, not to Alaska Airlines or public businesses. And it's entitled workplace policy. That's not a mask policy for the airline at the airport. So the whole premise that there was state action, that Alaska was doing anything with us, the airlines was doing anything with the state of Alaska is just not there. It is. I just want to make sure I understand, because Alaska is a very interesting place. It is correct, isn't it, that the only practical way to get from Anchorage to Juneau is by Alaska Airlines? I've never had the honor of being there. I will take that as it's true. You're not contesting that. I'm not contesting that, but I don't think it's relevant. And all of the mandates that Appellant was referring to are federal mandates. I mean, it started with President Biden's executive order the day after he was inaugurated. It was followed by a CDC order, which was followed by a TSA order, which was then followed by a DOT order. And it's the DOT order that told airlines, OK, this is what you've got to do. Now that we have the lay of the land, we know what's going to be happening. These are the things you need to do and what you can do to conform to the mask mandate, which was from the CDC, and also the relevant federal aviation anti-discrimination law, which is the Air Carrier Access Act. You do these things and presumably you're doing the right thing. And they did. Is there any allegation or fact anywhere in the record to indicate that there was any communication between a state official and Alaska Airlines or any directive from a state official to Alaska Airlines beyond Alaska's own mask policy? No, Your Honor, absolutely not. And sorry. The other problem with the 1983 claim is that no constitutionally protected right has been identified. There's no constitutional right to fly. There's certainly no constitutional right to fly Alaska Airlines. She's arguing due process. I think she's arguing that there was a lack of notice and a due process. She's not allowed to have due process in. She called it behind closed doors in a board meeting at Alaska Airlines. There's no due process doesn't extend there. By inference, the record is. That there was notice, Ms. Appellant refers to having to click boxes as she's checking in. Well, that's acknowledging the mask and other policies that the airline maintained. I want to also address the issue of Ms. Appellant continually says she had a valid mask mandate. That's not true. Mask exemption. Apologize. She had a doctor's note and the doctor's note was first of all, never shown to Alaska. But more importantly, a doctor's note didn't qualify you for a mask exemption, at least not with Alaska Airlines. And so pursuant to that, D.O.T. order that I mentioned that told airlines you can do this, this and this. And you'll be complying with the law. They specifically said you can ask for recent PCR test results. You can ask for medical documentation if necessary. All the things that the record and particularly, I think, the early complaint in this case clearly show the appellant just pushed back on. I mean, she she thought that was an invasion of her privacy. So, you know, there was a procedure. And again, at the time this happened, forgive me for interrupting. At the time this happened, what was the status of of the any exemption? Was the mask mandate, the federal mask mandate situated at this point where it would have been possible for a passenger to say, I have this need for an exemption? Yes, Your Honor. I mean, again, this complaint sort of spans a long period of time from 2020 to about April 2020. I'm just talking about the day of the incident when she said she referred to the evidence in the record. So she referred to having an exemption or a note from her physician. And I think what you're saying is on that day, it would have been possible for a passenger to have one. I appreciate you said that it wasn't shown. I appreciate that. I understand that. But I just want to make sure that that was the status quo on that day. Yes, Your Honor is correct. You would have needed, however, to have gone through the process in advance. You couldn't just show up at the airport and say, hi, I have a mask exemption unless you had gone through the process and that got put into your reservation record. And so when you're there, they can pull it up and see, OK, you don't need a mask. Then I think if the federal claims are not sustainable and I submit they absolutely are not with no amount of amending is going to bring state action into this or create a constitutional right that was infringed. The emergency use authorization has no application to airlines and their masking policies. So those are federal claims that raises an issue, which is not before the court that the trial court never reached it because it didn't need to. But if those claims are out, then there would have to be and the court were to remand, which it should not on the other claims. There would be a need to consider whether there's supplemental jurisdiction with respect to the state claims. I don't see how those are sustainable at all. And that's been thoroughly briefed. And I think, you know, the case was ultimately dismissed and judgment entered on two bases. One basically is a sanction for not complying with court orders. And secondly, for not meeting the pleading standards and the foeman factors. So we got foeman factors and verdict factors, the foeman factors under Rule 15 and foeman versus Davis. I think the parties joined those issues with respect to the verdict factors, which have to do with a rule 46 dismissal. I didn't see that the appellant said anything about that. There's a let me just check to see if my colleagues have any questions for you. No, I don't think we do. If I could just make one final point. Of course, there's just a kind of fundamental fairness issue here, too, in terms of a rule eight. Maybe it's technical in some sense and all the other rules are technical, but they serve important purposes. So I represent eight individuals who were personally sued by appellant and they have this case hanging over them. And we can't tell what is alleged against them. If you go through the complaint, there's no allegations that X did A and Y did B. And that's just not that's not fair to them. And with that, I urge the court to to affirm. Thank you for your argument. Thank you. First of all, I would like to say I refute many things that he said. There were multiple issues of genuine fact that are in dispute that barred a motion to dismiss. There are numerous ones. When justice requires, it's supposed to be liberally granted leave to amend. My third amendment complaint where I focus and honed in on like Dennis versus Sparks joint action, their exact places in the 1983 that your honor that you ask. I honed in very, very specifically on those. He is an error. If you read the federal mandate, they clearly say that every single one of them excludes local jurisdiction. There's this military and then the D.C. where they're totally under federal control. But other than that, they're under local and state jurisdiction. The mandates, every single one of them, irregardless of whether it's a state mandate, a local mandate or the federal mandate, it doesn't really matter. Because the bottom line is they were they were applied in their own jurisdiction. And and that the federal ones excluded the local and state jurisdiction and the Ted Stephens Airport is state jurisdiction. And that, you know, is under local jurisdiction. And it was the director and it was TSA and the director of the management that told me that TSA, even as I came here, said that they had jurisdiction only in the screening area and on the conveyances. So that, again, is another factual dispute that would have barred the motion to dismiss. Opposing counsel is right that there was one of the reasons for dismissing here. And and disallowing leave to amend was better to comply with the with the rules. You know, the pleading rules, the procedural rules. And I'm wondering what your response is to opposing counsel's point that the complaint, the amended complaint doesn't put the individual defendants on notice of what they did. Well, I'm your honor. Rule eight actually just said at the pleading face because we've never had a hearing. We've never had discovery. I've never even met him before. I didn't. We have nothing in five years. And so the notice of pleading, it just has to be on fair notice. They have had, I mean, 26 exhibits. If they don't cognizable, I'm sorry. But why would they do a 75 page reply? I genuinely believe they're playing ignorance. It's not that they're not cognizable. They're just plain playing ignorance. And they excluded the most important, the federal mandate from February 5th that identified they were supposed to notify passengers how to get exemptions. They failed. That required it. 77 days later after failing five different ways, that mandate, they banned me. And they were told immediately that they had to update their policies and stop the no exemption policy, which I have it on recorded multiple times, by the way, that I was respectful and just asserting my rights. So the bottom line here is that I would like to state that the facts are in my favor. The law is on my side. They were warned not to deny transportation. They knew they were the monopoly carrier. They knew as an elected official I was dependent upon them. Instead, they decided to weaponize the mandate. They targeted me. They had no intention of ever honoring my mask exemption. And I promise I was always willing to show. That's in my affidavit. And I carried it with me. Under the joint act, they were joint actors when they went and summoned the police and summoned TSA and came and confronted me when I was peacefully sitting there. As I tried to peacefully board, they threatened to cancel my ticket if my mask wasn't on. My mask was on and it was up. That's why Video X is police video. It is government video. Yes, I overlaid the quick recording that I took. And they're from different cameras. But it is a valid. And then at the very end, just for clarity, I explained what was going on. It's very important to use that to assess joint action. So basically, your honors, what I'm asking you to do, this ban made international news. It is of great public interest. Can a private corporation that gets federal money, they're stating they're upholding mandates. It doesn't matter which mandate. They're still joint actors. And the bottom line here is that no appellate court has addressed the fact. Can a monopoly carrier ban a sitting senator while enforcing both Biden and Dunleavy mandates or local mandates with airport and police coordination? This case involves unique distinguishing facts under unique mask mandate in play. My ask is narrow. I'm asking for remand with proper adjudication of existing laws. In summary, a private corporation should not be allowed to weaponize the mandates. Summons police while violating 14 CFR 382-19. There was a whole bunch of 14 382s that they were violating. This is not private conduct. This is joint action. That is exactly what 1983 was written to prevent. So, your honor, I'm asking for remand with clear, your honors, I'm asking for remand with clear directions. This is a golden opportunity. You need to answer the question, may joint actors that get federal money saying they're upholding a federal mandate, can they violate 1983 civil rights? And then the only due process that's given is behind closed corporate doors. This case is very important, and it goes far behind me that the trajectory of my life. It's going to have broad impacts. It's a very important decision. I pray and hope that you will weigh it heavily. And what you do is going to matter in the future. And with that, thank you. It's an honor to be before you. Thank you for your advocacy. It's you're well over your time. So I'm going to stop there. I want to thank you both. We'll take that case under advisement and we'll get your decision just as soon as we can. We'll stand in recess. All rise. Thank you.
judges: SCHROEDER, CHRISTEN, FORREST